**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

EVELYN YSLAS, Plaintiff,

v.

MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, Defendant.

NO. ED CV 11-1071-E

**MEMORANDUM OPINION AND ORDER OF REMAND**

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on July 14, 2011, seeking review of the Commissioner's denial of benefits. The parties filed a consent to

proceed before a United States Magistrate Judge on July 26, 2011. Plaintiff filed a motion for summary judgment on December 13, 2011. Defendant filed a motion for summary judgment on February 16, 2012. Plaintiff filed a reply to Defendant's motion for summary judgment on February 22, 2012. The Court has taken the motions under submission without oral argument. See L.R. 7-15; "Order," filed July 15, 2011.

## BACKGROUND

Plaintiff, a former fast food cook and caregiver, asserted disability since August 1, 2003, based on, inter alia, "suicidal/ bipolar/anxiety/[high blood pressure]/alcoholism/[avascular necrosis of the left hip], stroke, [and] [syncope]" (Administrative Record ("A.R.") 187-88). As discussed in more detail below, Plaintiff claims she suffers from disabling pain and other symptomatology of allegedly disabling severity (A.R. 31-44, 52-77).

On October 28, 2010, an Administrative Law Judge ("ALJ") found Plaintiff not disabled (A.R. 15-24). The ALJ determined that Plaintiff had performed substantial gainful activity through August 31, 2008 (A.R. 18). The ALJ found that Plaintiff suffers from severe "avascular necrosis of the left hip secondary to alcohol abuse; depressive disorder, not otherwise specified; personality disorder with mixed features; and alcohol abuse in early remission" (A.R. 18). However, the ALJ found that, absent substance abuse, Plaintiff retains the capacity to perform a full range of medium work, limited only by not working around hazardous machinery or having responsibility for the safety of others (A.R. 22). The ALJ found Plaintiff capable of

performing moderately complex tasks of 4- to 5-step instructions in a relatively habituated setting, preferably object-oriented work (A.R. 22-23 (adopting medical expert's testimony at A.R. 46)). According to the ALJ, Plaintiff can perform her past relevant work as a companion, fast food cook, or dietary aid despite her limitations (A.R. 23 (adopting vocational expert testimony at A.R. 80-81)). In denying benefits, the ALJ deemed Plaintiff's testimony credible only to the extent consistent with the residual functional capacity the ALJ found to exist (A.R. 23). The Appeals Council denied review (A.R. 1-3).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006).

**DISCUSSION**

Plaintiff contends, inter alia, that the ALJ erred in the process of evaluating Plaintiff's credibility. On the present record, the Court agrees.

**I. Summary of the Medical Record**

The record reflects that Plaintiff has a long history of alcohol and drug abuse. In October 2004, Plaintiff admitted to drinking daily for the previous 25 years, using methamphetamine 1-3 times per week for the previous 15 years, and using marijuana occasionally (A.R. 254-57, 260). Plaintiff was diagnosed with attention deficit disorder with hyperactivity, alcohol, methamphetamine and cannabis abuse, personality disorder not otherwise specified, and high blood pressure (A.R. 254). Plaintiff received residential treatment for alcohol abuse from August 2004 through November 2004 (A.R. 252).

Plaintiff's drug and alcohol abuse continued beyond 2004. In August 2005, Plaintiff dropped out of a detoxification program for alcohol and methamphetamine use (A.R. 251). In January 2009, Plaintiff was hospitalized for gross alcohol intoxication and possible drug overdose and for making suicidal threats (A.R. 299, 301, 316). Plaintiff underwent detoxification and was released (A.R. 300). Her reported prognosis upon release was "poor, it is just a matter of time before she relapses" (A.R. 300).

Plaintiff was hospitalized in April 2009 for suicidal ideation and anxiety (A.R. 281). Plaintiff then had a blood alcohol content of 0.33 (A.R. 295), and was diagnosed with alcohol dependence, a history of polysubstance abuse, depressive disorder, not otherwise specified, and features of mixed personality disorder (A.R. 282). Plaintiff underwent detoxification and was discharged to family to go to a drug and alcohol rehabilitation program (A.R. 282).

In August 2009, Plaintiff was hospitalized for an accidental overdose of methamphetamine (A.R.356-57, 362-63, 367). A treatment note from November 2009 states that Plaintiff was drinking alcohol daily and planned to go to rehabilitation (A.R. 332). Plaintiff complained of chronic bilateral hip pain and was prescribed Demerol (A.R. 343).

An MRI of Plaintiff's hip in January 2008 showed avascular necrosis[1] without evidence of collapse (A.R. 274; see also A.R. 380 (February 2010 x-ray report noting same); A.R. 390 (February 2010 imaging report indicating arthritic changes to the left hip)). Plaintiff underwent core drilling on her hip in 2006 (A.R. 275). Records from November 2009 through March 2010 show that Plaintiff was given Vicodin for left hip pain (A.R. 386, 388).

For her February 24, 2010 Internal Medicine Evaluation by Dr. Bryan To, Plaintiff reported that she did not drink alcohol (A.R. 376). Dr. To stated that Plaintiff has left hip pain secondary to avascular necrosis diagnosed in 2004, and opined that Plaintiff would be capable of pushing, pulling, lifting and carrying 50 pounds occasionally and 25 pounds frequently, standing and walking six hours in an eight-hour day, and sitting with no restrictions (A.R. 378). Dr. To would restrict Plaintiff from working with heavy and moving machinery, but found no agility or postural limitations and no need

///

///

---

[1] Plaintiff's treating physician explained to Plaintiff that avascular necrosis is related to alcoholism (A.R. 276).

for assistive devices for ambulation (A.R. 379).[2]

Dr. Bagner, an examining psychiatrist, prepared a Complete Psychiatric Evaluation for Plaintiff dated March 1, 2010 (A.R. 381-84). Plaintiff complained of depression, anxiety, nervousness, having a hard time being around a crowd, hurting herself with cuts and burns, feeling useless, helplessness, hopelessness, low motivation, difficulty with concentration and memory, panic attacks, auditory hallucinations of voices talking, visual hallucinations of shadows, a history of suicidal and homicidal ideation, and difficulty falling and staying asleep (A.R. 381). Plaintiff acknowledged a history of polysubstance abuse, but reportedly quit abusing substances two months before the interview (A.R. 382).[3] Dr. Bagner diagnosed Plaintiff with depressive disorder, not otherwise specified, polysubstance abuse in early remission, status post head trauma, left hip pain, auto accident, and left hip surgery (A.R. 383). Dr. Bagner found that Plaintiff would have: (1) no limitations in completing simple tasks; (2) mild limitations in interacting with supervisors, peers and the public, maintaining concentration and attention and completing complex tasks; (3) mild to moderate limitations handling normal stresses at work and completing a normal work week without interruption (A.R. 384). Dr. Bagner did not indicate whether the limitations he found to

---

[2] Dr. G. Spellman's Physical Residual Functional Capacity Assessment dated April 15, 2010, is in accord. See A.R. 406-12. Dr. Spellman's assessment expressly assumes abstinence from drug and alcohol use (A.R. 412).

[3] Yet, Plaintiff testified she was using drugs and alcohol until at least May 14, 2010. See A.R. 43-43 (testimony); A.R. 418 (May 2010 medical record reflecting use).

exist would continue if Plaintiff remained sober.[4]

## II. Summary of the Administrative Hearing Testimony

Plaintiff testified that she stopped working because of hip pain (A.R. 38). Plaintiff explained that she was in so much pain she could not comprehend, and she felt anxious (A.R. 41). Plaintiff also complained of anxiety, paranoia, and hearing her own thoughts, claiming that she gets too nervous around people and cannot work (A.R. 49, 56, 68-71; see also A.R. 52, 56 (Plaintiff testifying that her biggest hurdle to working is being around people); A.R. 187 (undated report from Plaintiff stating that her ability to work is limited because she "cannot be around a lot of people, get[s] very nervous, cannot concentrate, cannot function well, and cannot keep a job because of memory loss")). Plaintiff said she was waiting for a hip replacement, but only recently had become insured (A.R. 53, 60; see also A.R. 197 (Plaintiff reportedly wakes up screaming in pain because of her hip, has difficulty putting her pants on because of the pain and has difficulty sitting on the toilet because of the pain); A.R. 205, 209 (statements from Plaintiff’s sister-in-law potentially corroborating Plaintiff’s pain symptom testimony)). Plaintiff

---

[4] Dr. Tashjian, a non-examining state agency physician, completed a Psychiatric Review Technique form dated April 13, 2010 (A.R. 392-402). Dr. Tashjian stated that Plaintiff suffers from depression (A.R. 392-402). Dr. Tashjian indicated that Plaintiff would have mild restrictions in her daily activities and in maintaining social functioning, and moderate restrictions in maintaining concentration, persistence, or pace (A.R. 400). Dr. Tashjian opined that Plaintiff would have moderate limitations in her ability to understand, remember and carry out detailed instructions (A.R. 403-05). Dr. Tashjian believed Plaintiff could complete simple repetitive tasks (A.R. 405).

testified she had not used drugs or alcohol since her hospitalization in May 2010 (A.R. 42-43).[5]

Plaintiff described herself as a homebody and said she just wants to stay home (A.R. 56). Plaintiff testified that she does not drive, but cooks, grocery shops, watches television, reads, attends church, and helps her mother clean house (A.R. 63-67).[6]

Psychologist Dr. Joseph Malancharuvil reviewed the record and testified at the administrative hearing (A.R. 44-52). Dr. Malancharuvil acknowledged that Plaintiff reported to Dr. Bagner that Plaintiff suffers from:

> depression, anxi[ety], nervousness, . . . [has] a hard time being around a crowd of people, . . . [gives herself] cuts and burns and feels useless. She has feelings . . . of helplessness and hopelessness, low motivation, difficulty with concentration and memory, . . . has panic attacks,

---

[5] Medical records from a May 2010 emergency room visit show that Plaintiff was treated for a head injury (A.R. 416-31). Plaintiff reportedly admitted to heavy use of alcohol and use of amphetamines and marijuana (A.R. 418).

[6] In a Function Report - Adult dated December 30, 2009 (time when Plaintiff admittedly was still drinking) Plaintiff reported that she "mainly" would lie down all day with an ice pack or heating pad on her hip (A.R. 196). Plaintiff stated she was able to take her medicine, shower, make her bed, eat her meals, help with dishes, and go to doctor's appointments (A.R. 196). Plaintiff said she suffered from bad anxiety that affected her sleep (A.R. 197). Plaintiff reports impairment of memory, concentration and understanding (A.R. 201); <u>see also</u> A.R. 206, 209-11 (statements from Plaintiff's sister-in-law potentially corroborating Plaintiff's mental symptoms).

> . . . auditory hallucinations of voices talking, and recent hallucinations of shadows.

(A.R. 50). Dr. Malancharuvil continued:

> And [Bagner] concluded after examining [Plaintiff], that she has a depressive disorder not otherwise specified, and polysubstance abuse in early remission, with a GAF of 70. And he concluded that [Plaintiff] would have no limitations completing simple tasks, she would have mild limitations interacting with supervisors, and maintaining concentration and attention, and she would have mild to moderate limitations (inaudible) normal (inaudible) at work, completing a normal work day without correction. . . .
>
> So that, so she's right in that she (inaudible). But [Bagner] concluded that if [Plaintiff] doesn't drink or do drugs, that her condition would, would not be as bad as she had declared subjectively.

(A.R. 50-51). When asked whether he thought Plaintiff would have any kind of social restrictions, Dr. Malancharuvil testified: "[T]he doctor said she would have mild to maybe maximum moderate difficulties in substantives. So that's why I weighted her as having only moderate so. . . probably object oriented work. . . . but social contacts are not excluded." (A.R. 51-52).

///

///

The vocational expert testified that a person with the limitations the ALJ found to exist could perform Plaintiff's past relevant work as a companion or dietary aid as generally performed, or a fast food cook as Plaintiff performed the work (A.R. 80-81). If the person were limited to nonpublic work and no "intense" interaction with coworkers and supervisors, the person could not do the dietary aid job or the companion job (A.R. 81). If the individual were off task a third of the day due to anxiety or absent from work three to four times a month due to anxiety, all jobs would be eliminated (A.R. 81).

**III. <u>The ALJ Erred in the Process of Evaluating Plaintiff's Credibility</u>**

Plaintiff contends that the ALJ did not provide adequate reasons to support his adverse credibility finding. <u>See</u> Plaintiff's Motion at 4-6; Reply at 3-5. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce . . . limitations," but rejected Plaintiff's credibility to the extent Plaintiff's testimony and statements were not consistent with the ALJ's residual functional capacity determination (A.R. 23).

The ALJ's decision does not discuss any of Plaintiff's specific testimony other than Plaintiff's testimony concerning her daily activities. <u>See</u> A.R. 23 ("The claimant testified at the hearing that she had not used alcohol or drugs since May 2010 and she has started attending Alcoholics Anonymous meetings. She testified that her activities of daily living include going grocery shopping, watching

television, reading novels, helping clean house, going to church, etc.”). The ALJ’s decision fails to explain what symptom testimony the ALJ found not credible and why the ALJ found such testimony not credible. The ALJ’s decision also fails to mention the potentially corroborative statements made by Plaintiff’s sister-in-law.

To support a negative credibility determination, at a minimum the ALJ must make “specific, cogent” findings, supported in the record. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010); Turner v. Commissioner of Social Security, 613 F.3d 1217, 1225 (9th Cir. 2010); Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007); Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (citing Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) and Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990)); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (the ALJ’s credibility findings “must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant’s testimony on permissible grounds and did not arbitrarily discredit the claimant’s testimony”) (internal citations and quotations omitted); Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ must “specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony”); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (“The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.”); see also Social

///

///

///

///

Security Ruling 96-7p.[7] The ALJ's summary rejection of Plaintiff's credibility failed to satisfy these requirements.

While an ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment, Orn v. Astrue, 495 F.3d at 635, the ALJ should have discussed Plaintiff's specific testimony and explained the weight given to that testimony. See generally 20 C.F.R. § 404.1529(c)(3) (the Administration will "carefully consider" information a claimant may submit concerning her symptoms). From the record, the Court cannot determine whether the ALJ considered Plaintiff's potentially material testimony and rejected it for permissible reasons, or whether the ALJ arbitrarily discounted such testimony. For example, the Court cannot determine whether the ALJ properly evaluated Plaintiff's testimony regarding the allegedly disabling hip pain and the alleged memory loss or arbitrarily discounted such testimony. The ALJ also should have addressed the potentially corroborating statements of Plaintiff's sister-in-law regarding Plaintiff's alleged symptomatology. See Stout v. Commissioner, 454 F.3d 1050, 1053 (9th Cir. 2006); Dodrill v. Shalala,

---

[7] In the absence of evidence of "malingering," most recent Ninth Circuit cases have applied the arguably more rigorous "clear and convincing" standard. See, e.g., Taylor v. Commissioner of Social Security, 659 F.3d 1228, 1234 (9th Cir. 2011); Brown v. Astrue, 405 Fed. App'x 230, 232 (9th Cir. Dec. 10, 2010); Valentine v. Commissioner, 574 F.3d 685, 693 (9th Cir. 2009); Vasquez v. Astrue, 572 F.3d 586, 592 (9th Cir. 2009); Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007); Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting cases). In the present case, the ALJ's findings are insufficient under either standard, so the distinction between the two standards (if any) is academic.

12 F.3d 915, 918-19 (9th Cir. 1993); SSR 96-7p; see also Johnson v. Astrue, 2008 WL 2705172, at *2 (C.D. Cal. July 7, 2008) (ALJ's failure to mention potentially corroborative lay witness testimony not harmless because "[c]rediting that testimony might have caused the ALJ to reach a different decision regarding Plaintiff's credibility, and ultimately, Plaintiff's disability").

**IV. Remand is Appropriate**

Because the circumstances of the case suggest that further administrative review could remedy the ALJ's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); see Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) ("Connett") (remand is an option where the ALJ fails to state sufficient reasons for rejecting a claimant's excess symptom testimony); but see Orn v. Astrue, 495 F.3d at 640 (appearing, confusingly, to cite Connett for the proposition that "[w]hen an ALJ's reasons for rejecting the claimant's testimony are legally insufficient and it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony, we remand for a calculation of benefits") (quotations omitted); see also Vasquez v. Astrue, 572 F.3d at 600-01 (agreeing that a court need not "credit as true" improperly rejected claimant testimony where there are outstanding issues that must be resolved before a proper disability determination can be made); see generally INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, except in rare circumstances).

**CONCLUSION**

For all of the foregoing reasons,[8] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 8, 2012.

______________/S/__________________
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[8] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the payment of benefits would not be appropriate at this time.